UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Criminal No. 21-060-JJM |
| v. | ) |
| | ) |
| MICHAEL WILLIAMS, | ) |
| Defendant. | ) |

### GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Michael Williams ("Williams") is due to be sentenced on November 18, 2021, on one count of conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349. Williams was a key member of a years-long conspiracy to defraud banks by recruiting homeless individuals to pass counterfeit checks. Williams was actively involved in all aspects of the conspiracy, including soliciting homeless individuals, creating counterfeit checks in their names and transporting them to banks to attempt to cash the bogus checks. The scheme was especially pernicious as it exploited the homeless individuals' desperation for money. In exchange for a small amount of cash, the homeless individuals absorbed all of the risk as they were the ones who were caught on camera in the banks while Williams and his co-conspirators were parked a safe distance away. When many of the homeless individuals were arrested in the banks for attempting to cash counterfeit checks, Williams and his co-conspirators simply drove away, leaving the homeless individuals on their own to face the consequences of their crimes.

As the defendant and his co-conspirators never entered the banks, it took years of difficult work for law enforcement to gather enough evidence to charge Williams and his three co-conspirators with running this complex scheme. By that time, approximately $677,687 in counterfeit checks were presented at banks throughout the region, causing losses of

approximately $480,000. The sentencing factors under 18 U.S.C. § 3553(a), particularly the seriousness of the offense, the protection of the public and the need for just punishment and adequate deterrence, call for a significant sentence of imprisonment. The United States therefore recommends that the Court impose a sentence of 41 months' imprisonment, which is at the low-end of the calculated Guideline range.

Seriousness of the Offense

The first sentencing factor the Court must consider under 18 U.S.C. § 3553 is the seriousness of the offense. There can be no question that the offense committed by Williams was extremely serious. Williams and his co-conspirators devised a sinister scheme to defraud banks throughout New England. First, Williams and his co-conspirators stole or otherwise obtained legitimate checks from local businesses and individuals throughout New England. Armed with the routing and account numbers of these bank accounts, the defendants were able to create counterfeit checks using check-writing software.

Rather than taking the risk of entering banks themselves to commit fraud, however, the conspirators exploited the vulnerability of homeless individuals by paying them a small dollar amount to enter banks and pass counterfeit checks. Williams and his co-conspirators drove around areas of inner-cities where homeless people congregated – such as Kennedy Plaza in Providence – and approached these individuals with an offer many were too desperate to refuse. In exchange for a small amount of cash, typically $100, the homeless individuals agreed to be transported to banks and to attempt to cash counterfeit checks made out to them. At least one of the homeless individuals was threatened with physical violence if he did not return the money he received if he was able to cash the bogus check.

By devising the scheme in this manner, Williams and his co-conspirators were able to pass almost all of the risk onto the homeless individuals. Knowing that one hundred dollars was a lifeline to these people, the defendants enticed them to commit crimes on their behalf. If a check were cashed successfully, the homeless individual would give the bulk of the money (often in the range of $2,000-$3,000) to the defendant and his co-conspirators. If the bank realized that the check was counterfeit, law enforcement would be notified and the homeless individual would be arrested. What happened to the homeless individual from that point on was immaterial to the defendants – they simply drove away and looked for another homeless individual to put in harm's way. In fact, on one occasion, law enforcement surveilled one of Williams' co-conspirators – his brother Jalen Stanford - as he drove away from the bank and discarded the belongings of a homeless individual into a dumpster after he was arrested.

The fingerprints of this defendant were, quite literally, over every aspect of this conspiracy. Indeed, Williams' fingerprints were found on four different counterfeit checks that were passed by homeless individuals in Maine. Williams was arrested in February 2021 in Rhode Island when a homeless man attempted to cash a counterfeit check at a bank in Providence. When that man was arrested, he quickly told police that he was brought to the bank by two individuals that were parked nearby and that these individuals had offered him $200 to cash the check and told him that if he didn't give them the rest of the money, they would beat him up. Acting quickly, the Providence Police arrested Williams and co-conspirator Cortavious Benford in the vehicle identified by the homeless individual who had been arrested. The defendants had $12,000 in cash on their persons, believed to be the proceeds of prior acts of bank fraud.

The Secret Service then executed a warrant to search 190 Gallup Street in Providence, the address at which the defendants were based when their bank fraud activities took them to Rhode Island. In a bedroom in that location where the personal belongings of Williams and Benford were stored, agents found a mountain of evidence used to manufacture counterfeit checks, including a computer with check-writing software, several counterfeit checks made out to known check cashers containing victim business information, blank check stock and actual checks that had been stolen from local businesses and individuals.

There can be no doubt that this conspiracy – which lasted about two and a half years – was a serious criminal enterprise by a group of defendants determined to defraud banks out of hundreds of thousands of dollars. The seriousness of this offense includes both the loss to the banks themselves as well as the devious manner in which homeless individuals were exploited. The seriousness of this offense calls for a significant sentence of imprisonment.

Protection of the Public

There is also a significant need to protect the public from this defendant. Williams spent the better part of three years on a bank fraud spree during which he traveled throughout the country recruiting homeless people to cash counterfeit checks. The instant case concerns fraud that took place throughout New England from the Fall of 2018 through February 5, 2021. His criminal history, however, shows that Williams committed similar acts in Oklahoma. There is still an active warrant pending in Oklahoma based on Williams' arrest with co-conspirator Austin Weaver on June 18, 2019, for the identical conduct that underlies this case. Williams is clearly adept at stealing genuine checks, creating counterfeit checks and recruiting the most vulnerable amongst us to cash those phony checks. Both the financial institutions and the homeless population need to be protected from this defendant.

Moreover, Williams' conduct while on pretrial release in this case demonstrate the danger he poses to society. On July 29, 2021, after defendant had entered his plea of guilty in this case, he removed his Location Monitoring GPS unit without the approval of the Probation Department. (PSR ¶ 11) While awaiting a hearing on this violation, the defendant was arrested on August 25, 2021, by the Atlanta Police Department. He and two other individuals were arrested after narcotics, drug ledgers and a firearm were found in a car the defendant was driving. (PSR ¶ 52) Williams admitted this violation in a hearing before Judge Sullivan in which he acknowledged that there was probable cause to believe that he committed the drug and weapons charges with which he was charged in Georgia. At that point, the Court ordered defendant held pending sentencing.

Defendant woke up every day for almost three years with the aim of committing more and more fraud. After he was finally apprehended, and granted pretrial release by his Court, defendant responded by removing his location monitoring device and engaging in further criminal activity. The public needs to be protected from him.

<u>Need for Just Punishment and Adequate Deterrence</u>

The 18 U.S.C. § 3553 factors of punishment and deterrence are often closely related to one another such that the need for just punishment is given less emphasis. In this case, the Court should consider both of these factors when imposing sentence. With respect to the need for just punishment, there must be serious consequences for a defendant who engages in a years-long scheme to defraud banks out of almost $500,000. When defendant engaged in this conduct, he did so with full knowledge that he would likely be incarcerated if he were caught. As a society, we cannot allow this type of repetitive, continuous criminal activity to go unpunished. A

significant sentence of incarceration promotes respect for the law and sends the critical message to the public that the judicial system works in punishing serious crimes.

The punishment factor is, of course, closely related to the need to afford adequate deterrence. A significant sentence of incarceration will not merely act as a deterrence to this defendant from engaging in similar crimes, it will send a powerful message of general deterrence to others contemplating bank fraud and related criminal activity. White-collar defendants who commit fraud are by and large rational actors who weigh the pros and cons of their criminal conduct before undertaking it. Giving a heavy sentence to a defendant like Williams who has spent years committing fraud on a near-daily basis would send a powerful message to others that they will face significant terms of imprisonment if they decide to commit similar crimes.

There is also a strong need for individual deterrence in this case. Williams spent almost three years committing bank fraud with no consequences at all.  He was charged in Taunton District Court in September 2018 for bank fraud but the warrant against him was not executed. He was arrested and charged in Oklahoma in June 2019 for the identical conduct that took place in this case. (PSR ¶ 52) Williams was released after his arrest and left the jurisdiction; an active warrant in Oklahoma is still pending. Having avoided any actual consequences for his criminal activity, it is unsurprising that Williams continued to commit more and more bank fraud over the following two years. To have any hope of deterring Williams from engaging in further fraud or other criminal activity, a significant sentence of incarceration must be imposed.

Personal Characteristics of the Defendant

This Court must, as it always does, consider the personal characteristics of each defendant prior to sentencing. Williams presents as an individual who has a lot going for him – a devoted and loving mother, siblings with whom he has a close relationship (one of whom is a co-defendant in this case), a good relationship with his wife from whom he is apparently separated and close ties with his young daughter. It is true that Williams' father has an extensive criminal history which undoubtedly had an impact on the defendant, but his mother moved him from Rhode Island to Atlanta at the age of 6 and provided him with a stable and loving environment in which to grow up.

Defendant's work history is spotty, at best. In 2019, when he was not in New England or Oklahoma committing bank fraud, he worked in a grocery store in Atlanta. Prior to that, his sole employment consisted of performing as a rap artist for two years for which he reports earning $15,000-$20,000 annually.

When you look at the whole picture of who this defendant is, it is clear that he is an individual who was fortunate to be raised in a loving home with siblings and to have a positive relationship with his wife and child. He also is a high school graduate with some college education. Defendant did not enter into a life of crime because he came from a broken home or had no legitimate way to support himself. He did so only because it would be a way of making easy money, or so he thought. Defendant chose to engage in criminal activity as a career because he made a simple calculation that the rewards far outweighed the risk of being apprehended. This Court has the ability to prove defendant's calculation wrong. If defendant is ever to commit himself to living a law-abiding life, he must absorb the fact that the consequences of continuing

to engage in criminal activity far outweigh the short-term benefit of making easy money through crime.

For all of the foregoing reasons, a sentence of 41 months of imprisonment is sufficient, but not greater than necessary, to punish the defendant, promote respect for the law, protect the public, and afford adequate deterrence.

        Respectfully submitted,

        RICHARD B. MYRUS
        ACTING UNITED STATES ATTORNEY

        */s/ Lee Vilker*
        ―――――――――――――
        LEE H. VILKER
        Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

     I hereby certify that on this 15th day of November 2021, I caused the within Government's Sentencing Memorandum to be filed electronically and it is available for viewing and downloading from the ECF system.

                                /s/ Lee H. Vilker
                                LEE H. VILKER
                                Assistant U. S. Attorney,
                                U. S. Attorney's Office
                                50 Kennedy Plaza, 8th Floor
                                Providence, RI 02903
                                401-709-5000, 401-709-5001 (fax)